We'll call the case of Carl Greene versus Virgin Islands Water and Power Authority. Good morning. Good morning again. Raya R. Lawrence on behalf of Appellate Carl Greene. And I will be reserving five minutes for rebuttal. That request will be granted. Thank you. Did you try both these cases? We have a team, Your Honor, and I got tapped to argue them. They're very interesting cases. We were thoroughly engaged in both of them as a team. This case presents the question of whether or not the district court erred when it dismissed Greene's Title VII discrimination retaliation claim for insufficient evidence. This case also presents an important question that this court needs to resolve for this case as well as future cases. And that's whether or not WAPA is a person under Section 1983. And also whether you have a retaliation claim as opposed as or as well, right? Well, yes, Your Honor. The Title VII does not use the word retaliation at all. It says that you cannot discriminate on a person because they opposed, had a good faith belief that they're opposing discriminatory conduct. Retaliation is something the courts created. The statute does not state that. There's a, well, go ahead. Proceed. This case also presents a question as to whether or not the district court erred when it determined that Greene did not engage in First Amendment protected speech. Another issue that needs to be resolved is whether or not... We know the issues of the case. I guarantee you. We begin with the discrimination claim. It is Greene's contention that the district court erred because there was more than sufficient evidence in the record. Direct evidence as well as circumstantial evidence which would satisfy McDonnell Douglas that he opposed discrimination in that Bruno Vega was favoring Hispanics repeatedly. Okay, then you're back to the old comparator situation again here. Yes, Your Honor. And you're also into some waiver questions as to whether you properly raised that. The opposition? Yes. Your Honor, we believe the record will reflect that opposition was more than sufficiently pled. It was exhausted. It was litigated. His whole case was that he reported that Bruno Vega was favoring Hispanics. He opposed the fact that Hispanics were given preferential treatment and he was terminated because of it. In our recent decision in the United States v. Joseph, we said that you have to have raised the same argument in the district court. Merely raising the same issue is not enough. We raised this argument in the district court, Your Honor. Remember, this case was briefed on three different occasions on the Title VII claim. With the first motion for summary judgment that was filed, on a motion for reconsideration that was filed by WAPA, and then on the eve of trial, the court asked for another round of briefing on this issue. At all three levels, specifically in the last round where the case was finally disposed on Title VII, he raised the issue that he was opposing discrimination and the court simply ignored it, Your Honor. It was pled, it was litigated, it was exhausted. It would be disingenuous for WAPA to now contend that this is a new issue that was waived. It saturates the record and the pleadings below. How is Bilardo and Mercado, whatever his name was, and were they legitimate comparators? Ray Bilardo and Hector Mercado. They both were accused, similar to Green, of theft of electricity and or water, revenue loss. Both of them actually committed the acts. Both were not terminated. Both were Hispanic. Green was terminated. He never committed the act, and he was black, West Indian. But the question is whether they were similarly situated to your client, not whether they were treated the same. They were comparators, Your Honor. That's a flexible test under Reeves. I mean, we assert error on the part of the district court also by trying to keep this rigid rule of trying to find two people that fit perfectly and squarely as comparators. And comparators, that's a flexible inquiry. Well, if someone is not a comparator, even if they're treated better than you, it's of no significance. But Green contends he is a comparator. Well, that's the question, whether they are bona fide comparators. They are. I know that's your position. I'm just saying, as a legal matter, if we were to determine that they are not comparators, even if they were treated royally, that doesn't mean anything. And I can tell you right now, your adversary is going to say that they are not the samely situated as you. Yes, Your Honor. I understand that. But the district court still errs because it was direct evidence. Comparators are only relevant if you're dealing with circumstantial evidence under the pretext prong of the McDonald-Douglas test. I know that you relied heavily on comparator evidence in this case. We also relied on direct evidence, Your Honor. There was bombings. Go to each in turn. How are they comparators to your client? Your adversary's position is, yeah, they were treated handsomely, but they're not similarly situated as you. They were similarly situated because both, they all were accused of theft. Look, even if they're going to admit, and they're not going to, that they were treated better than you, they say that they are not the same as you. In other words, if someone treats someone better if they're not the same as you, that's not evidence of discrimination. But, Your Honor, we're not talking about treatment here. We're talking about they were comparators because A was accused of theft, B was accused of theft, C was accused of theft. If the president of the company is accused of theft and the doorman of the company is accused of theft, they are not comparators. Well, Your Honor, under the flexible approach, we believe that they are comparators. And one of them is a superintendent. I believe it was Hector Mercado, one of the comparators was a superintendent, Green was a superintendent. But we don't believe that that's the test, Your Honor. There was also direct evidence of discrimination. Again, you can get to a jury by putting forth both types. Baumann, who technically was a whistleblower in this whole issue, stated and testified that Bruna Vega wanted Green gone because he wouldn't hire the Hispanics that he wanted to have hired, period. Cornelius testified accordingly. You have Santos that testified also accordingly. All of this was direct evidence that Green was discriminated against, and we believe the district court erred in not using that evidence as direct evidence and dismissing on grounds that there was not enough circumstantial evidence, Your Honor. On the issue of First Amendment speech. Their position is this was not First Amendment. This had to do with his job. This was not a part of his job. He was lying superintendent. They're in charge of putting up poles, connecting wires. Revenue loss was the job of the Revenue Assurance Department, the Revenue Loss Department. They were the people in charge of making sure that there was no theft of electricity. He was not in a chain of command. He was not part of his job duty. He was a citizen. He was a user, electricity user. They accused him of stealing electricity in his house. He was a citizen when he reported that there was corruption and theft, and it was going on to disturb Kathy Smith, the person who was with him. She was also terminated. He admitted he made those statements pursuant to his official duties as what was he? A line supervisor, superintendent or something. He was a line superintendent. And he made those statements in that capacity. Your Honor, just because his job was line superintendent does not mean that he does not get to report as a citizen also. There is no ruling to the contrary. He was a citizen, and there's no further evidence that he was a citizen and using electricity also because they were the accused in the theft. Everyone's a citizen. We do not contend, Your Honor, that that was a part of his job duties, Your Honor. It's hard to distinguish that from Carcetti, the Supreme Court case of Carcetti. But let me ask you another question here on speech. What about the defamation claim? Your Honor, there is record evidence through Dunn, through the Santos affidavit, that it was widespread knowledge that Green was accused of theft. And no theft ever occurred, Your Honor. That he was terminated because he was stealing from WAPA. That is quintessential defamation and what the law of defamation was designed to protect against. You can't get facts that fit more squarely into what defamation is. And he was not only defamed. But the district court didn't consider that affidavit. Your Honor, and we believe it was error for the district court not to consider it, and it's a part of the record on appeal. It was never stricken from the record, Your Honor. And therefore, it's a part of the record, and we are relying on it in terms of, in determining, in arguing that there was error for not determining there was evidence of defamation. Is that affidavit enough to get you to the jury? Yes, Your Honor. All of the affidavits, I can't stress how much evidence there is that this case belongs in front of a jury. You can't report public corruption. Have it saturate the news media. Everyone's, all the public is in outrage. And then you get terminated, and it not be First Amendment protected speech. If these facts don't fit into what the First Amendment was designed to protect, I don't know what is. I believe it is very distinguishable from that Goretti case. Because in that case, he was a deputy assistant attorney who was tasked to do these types of things. That was in his job description. This was not in the job description of our client. Okay. We'll have you back on rebuttal. Thank you, Your Honor. Ms. Morgan. Good morning. May it please the Court. My name is Nicole Morgan. I'm here today representing the appellees, the Virgin Islands Water and Power Authority, and Alberto Brunivega. WAPA and Brunivega respectfully ask this Court to affirm the District Court's grant of summary judgment for the following reasons. Let me just ask you, you stated your reasons in the brief. No, we understand those. But let me just ask you about the defamation claim for a second. The Court didn't strike that affidavit. And the affidavit was part of the record. Why isn't that enough to get at least a defamation claim to the jury? The Court did not strike the affidavit, the Santos affidavit. That is correct. However, pursuant to Federal Rule of Civil Procedure 56A3, it specifically indicates that a court may elect not to review documents that are not cited in the summary judgment briefings. It is evident that this Santos affidavit was belatedly produced after the summary judgment briefings had completed, and the Court elected to employ the dictates of 56A3 to specifically not consider the Santos affidavit in light of the fact that it was not cited in the summary judgment briefings. Yes, but we have plenary review of this matter, and we can look at it. Certainly, Your Honor. But the Court would have to establish that the district court's failure to review the Santos affidavit constitutes error, and we submit that it does not constitute error. Well, not necessarily under plenary review. We look at the record anew. With respect to the Santos affidavit, we submit that it's… Should we look at it? We submit that you should not, Your Honor. All right. So you say we shouldn't look at it. But if we can, if we are allowed to look at it, do you acknowledge you have a little bit of a problem here? Absolutely, we do. Why can't we look at it? It's not… We don't submit that you cannot look at it, because this Court does have plenary review of this case. However, we submit that you should not look at it, because the district court properly did not… Elected not to consider it for the purposes of… Because it was not properly submitted. And that's another basis upon which this Court should not consider the Santos affidavit. It was submitted three, I believe, three years after the close of discovery. And WAPA would be prejudiced by the admission of this affidavit in light of the fact that it did not have an opportunity to inquire of Mr. Santos as it relates to these particular allegations in the affidavit. But that's actually your strongest argument, is it not? That they had no notice, you had no notice of it, that you were… We were railroaded, Your Honor. Yes, when this affidavit was submitted after the summary judgment briefings had completed. And when discovery had been completed, we didn't have an opportunity to inquire of Mr. Santos with respect to the allegations. You took no discovery on it either. Excuse me? You took limited or no discovery on it. But that was because we didn't have any information prior to… Well, I'm saying you didn't have the opportunity to take discovery on it. Exactly. With respect to appellant's claim that they have asserted that the record is replete with evidence of an assertion of an opposition retaliation-based termination claim, we submit to you that that is disingenuous. Appellant has not cited one part of the record that establishes that opposition or retaliation-based termination was the basis for the claim in the district court. Specifically, throughout, it was always a national origin status-based discrimination claim that was asserted. The information upon which, the evidence upon which they relied to support the status-based termination claim was creating an inference upon which discrimination was, an inference of discrimination could be established. We submit that the appellant did not establish that a similarly situated individual who sufficient such that they could establish the prima facie case of discrimination. Well, you heard her talk about her comparators, though. Right. She cites to Mr. Bilardo and Mr. Mercado, neither of whom are similarly situated with Mr. Green. There's a plethora of case law that specifically establishes that persons who are in different positions in different departments are not similarly situated. Number one, you will admit they were treated pretty well, though, for what they did. They were treated differently. Well, they were treated well. They were not booted. They were well treated. They were treated, they were not booted. That is correct. So the only question is whether they're similarly situated in so far as their jobs. Why aren't the jobs, you know, a job is a job in a company. The case law establishes that it's not, they're not similarly situated if they have a different position, a different supervisor, which was the case with respect to Mr. Green and Mr. Bilardo and Mr. Mercado. Additionally, the conduct that has to be, the conduct has to be generally equivalent in all respects. And there's no evidence of record to establish that Mr. Green's personal conduct as it relates to tampering with the meter at his residence with respect to his receiving the benefit of a security light without authorization and payment is equivalent of Mr. Mercado and Mr. Bilardo's failure to supervise a crew who purportedly engaged in revenue diversion or water diversion. Well, you're making his conduct sound like he's a thief. He's stealing something here. And he's, I don't know. You know, no one is similar to you in any job. There's not a job in the world that's exactly the same as everyone else's job. Except if you're an army, if you're a buck private, every buck private is the same. But you get away from that type of discipline. This man, these other people goofed up badly. They did. And they could have been, the consequences for what they did would have been disastrous for the company. And even if, even if they were treated differently, we submit that the costs. But you said they were treated differently and they were negligent, right? They were negligent in the performance of their responsibilities as it relates to supervision. So her position is he was negligent, too. He goofed up, too. He goofed up, too, but the conduct is not the same. That the supervision of a crew that engages in some sort of diversion, revenue diversion or water diversion, is different and distinct from a person who engages in personal conduct for their personal benefit at their residence. The case law establishes that the comparators have to engage in conduct that is relevantly equivalent without any mitigating or distinguishing factors to warrant or substantiate different treatment. And we submit to you, Your Honor, that there has not been any evidence of record to establish that the conduct that Mr. Green engaged in and the conduct of Mr. Bilardo and McCarter with respect to supervision of a crew that purportedly was engaged in inappropriate conduct constitutes equivalent conduct. And even if there are no appropriate comparators, Mr. Green does not get a free pass in terms of establishing a prima facie case. He certainly can give circumstances that give rise to an inference of discrimination, which he failed to do here. There is no evidence of record to establish that those circumstances exist, number one, and they're temporally proximate to his termination, number two. Absent any such evidence with respect to the temporal proximity between his refusal to testify at the PSC, which is not protected activity under Title VII, or his report to the IG as it relates to diversion, which also is not protected activity, or his challenge of the bidding process where a Hispanic outside service provider purportedly was getting the benefit of awarding bids, which potentially is protected conduct, there is no evidence of record. Appellant has not cited to one iota of evidence to establish that there was temporal proximity between when these purported protected activity occurred and his termination. That is an essential element of establishing a prima facie case and to be able to sustain his Title VII claim here. Did he meet his burden on pretext? What's that? Did he meet his burden on establishing pretext? Appellant did not meet his burden of establishing pretext. There's no evidence of record to establish that the real reason, or there's no evidence to support that a fact finder could rely on to support that they disbelieve the reason that WAPA established for the purposes of his termination. The record is replete with evidence to establish that the IG conducted an independent audit and identified Mr. Green as a potential person of diverting power. WAPA did not stop there. WAPA conducted its own investigation. It sent out its revenue manager to his property to determine whether or not he was diverting power. It was determined that it was a surge protector on his property at the meter, but it was tampering because the surge protector was placed on the WAPA side of the line as opposed to the customer side of the line. Their position is he was stealing electricity from the company, in effect. Excuse me? Their position is he was stealing electricity, the power. With respect, that's not the basis for his termination, Your Honor. The basis for the termination with respect to the meter tampering is because he placed the conductors for the surge protector on the WAPA side of the line as opposed to the customer side of the line. And as the highest ranking official in the line department, who else should know that that is not appropriate? Well, the effect of that is for his getting a lesser of a bill also, isn't it? The record does not establish that that is the case. That's not against their intent. What is that? We submit that it's intent because as the highest ranking official in the line department, he knew or should have known that, one, that only WAPA can place anything on the WAPA side of the line, and, two, that he— There was no reason for him to put a surge detector on the WAPA side of the line. But he actually did. I know he did, but there was no reason for it, was there? Well, I thought the reason was that because he would get charged less for— No. My understanding of the reason why he put the surge protector on his meter was because he was trying to make sure that the surges didn't destroy his— Exactly. Exactly. So, I mean, it was a protective measure to put the surge detector on. But he just put it on the wrong side of the line. And they had the right to say, as the electricity supplier, look, you did this the wrong way, whether you're in charge or whether you weren't in charge. But the fact that he was in charge— And it was worse because he was in charge. Exactly. It's worse because he was in charge. He was tasked with the responsibility of ensuring the integrity of the line department as the line superintendent. And his failure to— It seemed to me to be a bigger thing about nothing than it was made out to be. We submit to you that by virtue of the fact that he was the line superintendent, it undermined any confidence that— That's why I said it smacks more of negligence than intent. If it were someone maybe in the water department or the water superintendent, we would submit to you that it would be more of negligence than intent. But he had the requisite knowledge to know that he was not supposed to do this. Well, I would tend to agree with you on that. He knew where it belonged and put it on the wrong side. But what benefit did it do to him to put that there? It didn't cost him any less for service. What benefit did that do for him? And what deficit did it do for WAPA? By virtue of the fact that only WAPA is supposed to place anything on the WAPA side of the line, and by virtue of the fact that Mr. Green was the line superintendent tasked with the responsibility of ensuring the integrity of the lines on behalf of WAPA, that is what— It's a violation of a rule. Absolutely. Okay. But doesn't that cut in his favor on the pretext argument? It was maybe not as big of a thing as it would have been if it was put on there for purposes of reducing his bill. But the record doesn't bear out that that was the basis for the termination. In addition to the placing of the conductors on the WAPA side of the line, he also was the basis for termination included in subordination, as well as his benefit of a security light on his property without authorization and without payment. So there are multiple reasons for his reasons for termination, and we submit to you that the absence of evidence to establish that he intentionally put it there does not strengthen his pretext argument. Well, he ought to know where it belonged, that's for sure. He ought to have known where it belonged as the highest-ranking official in the line department, and we submit to you that that knowledge, by virtue of him not doing the right thing as it relates to a line for which he is tasked with responsibility, undermined any confidence that Bruno Vega or WAPA could have in Mr. Green as it relates to the exercise of his duties and responsibilities as line superintendent. I see that my time has expired. Unless there are any other questions from the panel, we respectfully ask that this Court affirm the grant of summary judgment in favor of WAPA and Mr. Bruno Vega. Thank you, Ms. Morgan. Thank you. Ms. Lawrence. The record will reflect that Green's charges were ever moving. He was first accused of stealing electricity. That didn't pan out. It then moved to putting the surge protector, which caused no loss to WAPA, no gain to him, on the line side. There is no violation of a rule, that there's no rule that says a surge protector could not be placed on the meter. It was put there before while his house was still in construction. WAPA came and actually placed the meter around the surge protector, Your Honor. I think you have to acknowledge that he shouldn't have put the surge protector on the WAPA's lost side of the line. His reasons for that reason was pretext to cover up the real reason why they wanted to get rid of him, was because Bruno Vega wanted him gone because he would not hire Hispanics and do his bidding. That is why the criminal charges were dropped. The Inspector General, Beaven Hoot, recommended criminal charges, but he was relying on the investigation that was done by WAPA, which was Bruno Vega's invention. You cannot state and take a neutral hand and say, oh, the IG recommended criminal charges, when the IG specifically states that he was relying on what WAPA told him. What WAPA told him to recommend that criminal charges be taken. Green did nothing wrong. They trumped up all of these charges, and it is for a jury to resolve whether or not any of these issues were the real reason why he was terminated. There is no evidence that he ever turned that light to become a security light. There were people who had security lights that were never terminated. He was singled out for termination. No loss, revenue loss occurred, even though Mercado and Berlarder caused revenue loss. This was all a fabrication to cover up. He was the boss. For the line department, Your Honor. He was a little bit different than maybe some of the others. But Mercado, I believe, was the boss also, Your Honor. But not of the line departments. But he was in charge of a crew who was responsible for a lot of theft that he knew about. He knew about the theft. And he was in charge. How was that less egregious for the no loss of revenue caused by Green putting a surge protector on the line's side? Because he should have done that. And he's the boss, and he knew that he should have done that. And the security light on his own residence. If you're the boss, you make a statement so that people follow you. If the boss doesn't do anything right, then why should anyone under you do anything right? Your Honor, we disagree with that. He did not even realize that that light was turned on his property. There is no evidence to determine when it was turned, who turned it. All of a sudden, it became an issue after the theft of the – He must have known that light was on – he didn't know that light was on his property? Your Honor, the light was there. And it's – I mean, you go to your house every day and you see things, Your Honor. But sometimes you're not mentally taking things in if you're going in and out every day. There were security lights on other people, higher positions. They were never terminated. There's no evidence that someone in a higher position than him were – did things intentionally that they shouldn't have done that were kept on the job. There was no evidence that the security light was there intentionally. There was no evidence of how it got there. He had to know it was there. He had to be blind not to see it was there. But, Your Honor, he did not move it there, Your Honor. There's a difference between it – and the record reflects that that pole was repaired at some point in time because of hurricanes. There's a difference between it being there and him directly being responsible for it being there. There's two differences. There was never any evidence that he, Green, was responsible for making that light into a security light. But he was terminated, Your Honor. What about Ms. Morgan's argument on the affidavit, on the Santos affidavit, that you filed it too late? They were precluded from getting discovery. Your Honor, the district court actually resolved that issue. That was the subject of a motion practice where they moved to strike it. Subject to a motion to what? Motion practice. They moved to strike it. We responded, and the district court specifically ruled he wasn't going to strike it, Your Honor. It's a part of the record, and on de novo review, it's there for your consideration. Well, they can also consider that the defendant didn't have an opportunity to take any discovery on it. That's part of considering the affidavit that they never knew was coming until the last minute. Rule 56 specifically allows affidavits to be submitted in the summary judgment stage. That's just a part of the rule. Yeah, but can't the court also consider that it was admitted and the adversary never had an opportunity to do any discovery concerning the modifies of the affidavit? The district court did consider that. As I said before, that was a subject matter of motion practice before the district court, and he specifically ruled he was not going to strike it. Okay. All right, Ms. Lawrence. Thank you, Your Honor, very much, and we seek reversal of the district court's decision. I understand. We thank both counsel for excellent arguments, and we will take this matter under advisement.